2 F.3d 1156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William G. COTE, Plaintiff-Appellant,
v.
Donna E. SHALALA,* Secretary of Health and Human
Services, Defendant-Appellee.
 No. 91-36232.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1993.**
Decided Aug. 11, 1993.
 
 Before: CANBY, WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 The Secretary of Health and Human Services concluded that William G. Cote was not disabled within the meaning of the Social Security Act and denied his claim for Social Security disability benefits. The district court affirmed the Secretary's decision. Cote appeals to this court, and we affirm.
 
 I. Facts
 
 3
 William G. Cote is 38 years old. His past relevant work experience includes work as an auto mechanic, a restaurant maintenance worker, a telephone salesman, a dishwasher, a bouncer, a construction laborer, and a grocery store stocker.
 
 
 4
 Cote claims disability since April 24, 1987, due to chronic lumbar back strain and arthritis of the back, neck, and shoulders, the onset of which is attributed to a slip and fall accident he experienced while working as an auto mechanic. The Secretary determined that Cote was not disabled for purposes of the Social Security Act.
 
 II. Standard of Review
 
 5
 We will disturb a decision denying benefits " 'only if it is not supported by substantial evidence or it is based on legal error.' " Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir.1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir.1986)); see also 42 U.S.C. Sec. 405(g) (1988). Substantial evidence means " 'more than a mere scintilla,' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)), but " 'less than a preponderance.' " Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir.1988) (quoting Sorenson v. Weinberger, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975)). " 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson, 402 U.S. at 401 (quoting Consolidated Edison, 305 U.S. at 229). We review the record as a whole and consider adverse as well as supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.1989).
 
 III. Discussion
 
 6
 Cote has the burden of proving disability within the meaning of the Social Security Act. Maounis v. Heckler, 738 F.2d 1032, 1034 (9th Cir.1984). "Claimants are disabled if a medically determinable physical or mental impairment prevents them from engaging in substantial gainful activity." Perry v. Heckler, 722 F.2d 461, 464 (9th Cir.1983); 42 U.S.C. Sec. 423(d)(1)(A). "The claimant establishes a prima facie case of disability by showing that [his] impairment prevents [him] from performing [his] previous occupation." Cotton v. Bowen, 799 F.2d 1403, 1405 (9th Cir.1986). "[A]fter a claimant establishes a prima facie case of disability by showing his inability to perform former work, the burden shifts to the Secretary to prove that the claimant can engage in other types of substantial gainful work that exists in the national economy." Maounis, 738 F.2d at 1034 (italics deleted).
 
 
 7
 Conceding that the evidence supported Cote's claim that he was unable to perform his former work, the ALJ nonetheless concluded that Cote was not disabled because he could engage in light and sedentary forms of substantial gainful employment. Cote appeals.
 
 A. Functional Limitations
 
 8
 "The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.1984) (citations omitted). Where the evidence supports more than one rational interpretation, we must accept the ALJ's conclusion. See Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir.1971).
 
 
 9
 Cote claims injuries suffered to his back in a slip and fall accident in December of 1986 have left him disabled since April of 1987. A review of the medical evidence reveals that substantial evidence supports the ALJ's rejection of his claim.
 
 
 10
 Just after his accident, Cote visited a 1st Care Med-Center complaining of headaches and numbness in his left arm. The record from that visit reveals that, although he was noticed as being in moderate distress upon movement and had some tenderness in his lumbar area, he walked with minimal distress, his motor and sensory examinations were within normal limits, and he was able to do straight leg raises to 90 degrees. Ultimately, Cote was diagnosed as having only lumbosacral back strain and was advised to take two days bed rest and do no heavy lifting for one week.
 
 
 11
 Almost simultaneously, Cote began treatment with a chiropractor, Dr. Mark Hengen. Dr. Hengen's evaluation of Cote reveals that by June of 1987, Cote displayed normal lumbar range of motion, no muscle spasms, and had no pain complaints. Dr. Hengen also opined that "a brief series of treatments would be sufficient to restore normal balance and function" and that Cote's "condition should respond to conservative measures." Cote last saw Dr. Hengen in February of 1988.
 
 
 12
 Subsequently, in March of 1988, Cote sought treatment from Dr. Michael Lucas for numbness in his legs and for headaches. Dr. Lucas's notes reveal that, upon his visit, Cote had full flexion, normal neurological findings, no spasms, normal gait, and no X-ray abnormality. Dr. Lucas's notes also reveal that he believed Cote maximally capable of medium work, meaning that he was capable of occasionally lifting 50 pounds and frequently lifting or carrying up to 25 pounds, and he was mildly restricted in his ability to stand and/or walk for a total of 6 hours per 8-hour day.
 
 
 13
 In October of 1988, Cote visited an allergist, Dr. Robert Stier, complaining of headaches and respiratory symptoms. Dr. Stier's notes indicate that, although Cote suffered from chronic allergic rhinitis associated with some vasomotor rhinitis and possibly vasomotor headaches, there were "not enough changes on the respiratory tract or the headache problem to warrant any disability in that respect...."
 
 
 14
 In January of 1989, Cote underwent a consultative examination by an orthopedic physician, Dr. James Williams. Dr. Williams noted that Cote had excellent range of motion of the cervical spine without muscle spasms and full range of motion of the upper extremities. With respect to Cote's lower back, Dr. Williams noted that Cote complained of pain only at the extremes of motion; that Cote could perform a deep knee bend and toe and heel gait; that Cote demonstrated no sensory or motor deficiencies in either lower extremity; and that Cote's lower spine x-rays showed no abnormality. Dr. Williams opined that Cote most likely was "experiencing symptoms consistent with soft tissue strain in the neck and low back area" and that "no further treatment is indicated other than a program of proper lifting coupled with back exercises." However, considering Cote's "significant subjective complaints of pain," Dr. Williams offered that "perhaps it would be appropriate to consider this young man for vocational rehabilitation into a field which did not produce continued aggravation to his back."
 
 
 15
 Two weeks later, Cote underwent a further orthopedic evaluation with Dr. Bagby. Dr. Bagby noted that the results of Cote's neurological, sensory, and muscle testing were all normal. Dr. Bagby also noted that Cote suffered from a somewhat limited range of motion in his neck and that overhead activity shut off Cote's circulation to some extent and caused some nerve pinching. However, Dr. Bagby found no neurological defects, noted that Cote was not a surgical candidate, and affirmed that Cote was receiving the proper conservative treatment. Although Cote advised Dr. Bagby that he was able to lift 50 pounds, sit for four hours, stand for four hours, and walk for two hours, Dr. Bagby nonetheless recommended that vocational placement would be helpful for Cote. When he was later told by Cote's attorney that Cote had difficulty sitting for more than 30 minutes at a time and that his leg would go to sleep and his back would hurt with such sitting, Dr. Bagby responded that these restrictions were greater than what normally would be expected.
 
 
 16
 Throughout his visits to these other physicians, Cote was also under the treatment of Dr. Eric Paulson. In October of 1988, Dr. Paulson diagnosed Cote as having chronic recurring low back strain and opined that Cote could sit or stand or walk for six hours throughout an eight hour day and could perform light exertional work, but that he could not perform frequent stooping or bending and should avoid engine fumes. Although Dr. Paulson saw Cote regularly from August of 1988 to May of 1989, at no point did Dr. Paulson seem to change his opinion regarding Cote's functional capacity. In fact, Dr. Paulson's medical records reveal that Cote was doing well throughout this period and that his taking of Voltaren seemed to be helping. As late as January of 1989, Dr. Paulson indicated that, although Cote should receive vocational retraining, he nevertheless believed Cote able to perform light mechanical work or light work.
 
 
 17
 Thus, the medical records of all physicians treating Cote during the time of his alleged disability indicate that Cote is not disabled by functional limitations for purposes of the Social Security Act. Against this great weight of medical evidence, Cote offers his own testimony and that of his wife. Cote first testified to his personal, educational, and work background. He also testified that after his original injury, he returned to work as a mechanic, but quit because of trouble with his boss, whom he characterized as overbearing and intimidating. He then attempted phone solicitation, a job from which he was fired because he did not have the proper voice and because of poor results. He then became a maintenance worker for a fast food chain, a job that he says he quit because his pain was too great. He has not worked since.
 
 
 18
 Cote also testified to performing various daily activities, including, among other things, driving his daughter to school, doing the dishes, doing yard work, vacuuming, picking up clothes and doing laundry, and working on his own cars. However, Cote testified that he was able to perform these activities only for about thirty minutes before having to rest. He also testified that he could sit one hour without adjustment and that he can lift approximately 26 pounds on occasion. He also testified that, since his injury, he has had almost constant back pain, which is most noticeable when he is sitting. Finally, he testified that he feels his condition is much worse now than when he injured himself in 1986 because his pain is more constant and because his headaches are more frequent and intense. Cote's wife generally corroborated his testimony.
 
 
 19
 However, notwithstanding the testimony of Cote and his wife, in light of the various medical record that indicate that Cote possesses at least light or medium exertional capacity, we conclude that substantial evidence supports the ALJ's finding that Cote is not disabled by functional limitations.
 
 B. Excess Pain
 
 20
 That conclusion, however, does not end our inquiry, because Cote also claims to be disabled by pain. Initially, Cote is required "to produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain. Cotton, 799 F.2d at 1407." Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991) (en banc). Because Cote has failed to meet this standard with respect either to his alleged headaches or his alleged respiratory problems, we consider those claims no further.
 
 
 21
 With respect to his back pain, however, Cote seems to have established the existence of an underlying impairment reasonable likely to be the cause of his alleged pain. "If the claimant submits objective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that [he] experiences pain at a higher level (hereinafter referred to as the claimant's 'excess pain'), the Secretary is free to decide to disbelieve that testimony, but must make specific findings justifying that decision." Cotton, 799 F.2d at 1407 (citations omitted).
 
 
 22
 The ALJ rejected as incredible Cote's disabling pain testimony. First, the ALJ considered that, after having painstakingly dissected the medical records of the physicians who had treated Cote, there was only sporadic mention of any complaints of pain or headaches. This court previously has approved reliance on medical records in making a disabling pain testimony credibility finding. See, e.g., Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir.1988) (ALJs' comments "indicate they considered [claimant's] credibility as well as medical evidence in making their decisions about [his] alleged disabling pain."); Green, 803 F.2d at 532 ("The ALJ thoroughly discussed the medical evidence in making his credibility finding.").
 
 
 23
 Second, under Social Security Ruling ("SSR") 88-13,[1] the ALJ also considered that the record before him contained no third party statements regarding Cote's subjective complaints of pain and that treating and examining physician charts, although noting those complaints, offered no response and no corroboration for the duration, frequency, or intensity of that pain. Further, the ALJ considered that leaning and other minor activity demands were the only precipitating factors in Cote's pain; that Cote took only Voltaren for his pain and alleged no side-effects; that Cote was under no treatment, other than Voltaren, for relief of his pain; that the treating and examining physicians' functional restrictions for Cote were confined to the light to medium exertional range and made no mention of disability; and that Cote performed various daily activities, albeit in a restricted manner.
 
 
 24
 Although the district court ultimately affirmed the ALJ's conclusion that Cote was not disabled by pain,[2] he took issue with the ALJ's findings, concluding that, "[a]fter reviewing the medical evidence and plaintiff's testimony, this court agrees that many of the factors cited by the ALJ for discounting plaintiff's credibility are simply not very persuasive." We think the district court gave too little credence to the ALJ's findings. Under SSR 88-13, and especially in light of Copeland and Green, we conclude that the ALJ's findings in rejecting as incredible Cote's disabling pain testimony were sufficiently specific.[3] See Bunnell, 947 F.2d at 346-48.
 
 C. Vocational Expert Testimony
 
 25
 Moreover, even if we disagreed with the ALJ's finding regarding Cote's disabling pain testimony, we would nevertheless have to conclude that Cote is not disabled for purposes of the Social Security Act. Although the ALJ found Cote's disabling pain testimony incredible, the ALJ's hypothetical to the vocational expert nonetheless reflected Cote's testimony regarding his headaches and his inability to sit, stand, or drive for more than thirty minutes.[4] Because a hypothetical need contain only those limitations and restrictions that are substantially supported in the record, see Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988); Gallant, 753 F.2d at 1456, and because the ALJ's hypothetical in this case included those and more, we conclude that substantial evidence supports the ALJ's finding that Cote is not disabled for purposes of the Social Security Act Cote's disabling pain testimony notwithstanding.
 
 
 26
 AFFIRMED.
 
 
 
 *
 Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 SSR 88-13 lists the factors that the ALJ must consider in determining the credibility of the claimant's disabling pain testimony:
 
 
 [1]
 The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
 
 
 [2]
 Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
 
 
 [3]
 Type, dosage, effectiveness, and adverse side-effects of any pain medication;
 
 
 [4]
 Treatment, other than medication, for relief of pain;
 
 
 [5]
 Functional restrictions; and
 
 
 [6]
 The claimant's daily activities
 
 
 [2]
 The district court affirmed the ALJ in reliance on Bates v. Sullivan, 894 F.2d 1059 (9th Cir.199), which held that disabling pain testimony could be rejected for lack of supporting evidence. Since the district court's decision, however, Bates was discredited by Bunnell v. Sullivan, 946 F.2d 341, 343 (9th Cir.1991), which makes it is clear that a claimant need not offer medical evidence that supports the severity of his pain, but only evidence that supports the existence of an underlying impairment that causes some pain
 
 
 [3]
 After all, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982) (quoting Waters v. Gardner, 452 F.2d 855, 858 n. 7 (9th Cir.1971))
 
 
 [4]
 In full, the hypothetical contemplated an individual of Cote's age, education, and work experience, who received no physical therapy or treatment other than Voltaren, who could sit, stand or drive for about thirty minutes without experiencing increased pain, who claimed to have headaches two or three times monthly, and who could lift fifty pounds occasionally and twenty five pounds more frequently